**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**WENDELL COREY ANDERSON,**

     **Plaintiff,**

**vs.**                               **CIVIL ACTION NO. 2:15-13834**

**CAROLYN W. COLVIN
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

     **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered January 5, 2016 (Document No. 7.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 9 and 10.)

The Plaintiff, Wendell Corey Anderson (hereinafter referred to as "Claimant"), protectively filed his application for Title II benefits on March 5, 2012, alleging disability since November 15, 2011 due to "hearing loss in both ears, insomnia, bad nerves/shaking, depression, stomach condition/vomiting/diarrhea, and slow reader/not able to spell well". (Tr. at 150-151, 169.) His claim was denied on June 18, 2012 (Tr. at 89-93.) and again upon reconsideration on November 30, 2012. (Tr. at 95-97.) Thereafter, Claimant filed a written request for hearing on January 10, 2013 (Tr. at 98-99.) and an administrative hearing was held on April 3, 2014 before

1

Administrative Law Judge ("ALJ") H. Munday. (Tr. at 26-61.) The ALJ heard the testimonies of

Claimant (Tr. at 31-50.) and Vocational Expert ("VE") Karen White. (Tr. at 50-60.) On April 25,

2014, the ALJ entered a decision denying benefits. (Tr. at 9-25.)

The ALJ's decision became the final decision of the Commissioner on August 18, 2015

when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6, 7-8.) On October 9,

2015, Claimant timely brought the present action seeking judicial review of the administrative

decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

<u>Standard</u>

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has

the burden of proving a disability. <u>See</u> <u>Blalock v. Richardson</u>, 483 F.2d 773, 774 (4th Cir. 1972).

A disability is defined as the "inability to engage in any substantial gainful activity by reason of

any medically determinable impairment which can be expected to last for a continuous period of

not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any

step, further inquiry is unnecessary. <u>Id</u>. §§ 404.1520(a), 416.920(a). The first inquiry under the

sequence is whether a claimant is currently engaged in substantial gainful employment. <u>Id</u>. §§

404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from

a severe impairment. <u>Id</u>. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third

inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1

to Subpart P of the Administrative Regulations No. 4. <u>Id</u>. §§ 404.1520(d), 416.920(d). If it does,

the claimant is found disabled and awarded benefits. <u>Id</u>. If it does not, the fourth inquiry is whether

the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§

2

404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4) and 416.920a(e)(4).

In this particular case, the ALJ determined that Claimant last met the requirements for insured worker status through September 30, 2014. (Tr. at 14, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, November 15, 2011. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: major depressive disorder; borderline intellectual functioning; panic disorder with agoraphobia; and alcohol abuse. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform medium work as defined in the regulations

except with occasional exposure to extreme heat and frequent exposure to hazardous conditions such as unprotected heights and moving machinery. The claimant can work in an environment with moderate noise level, defined as business office with typewriters in use; department store; light traffic; and fast food restaurants at off-hours. He is able to perform simple routine tasks with occasional interaction with the general public. (Tr. at 17, Finding No. 5.)

At step four, the ALJ found that through the DLI, Claimant was capable of performing past relevant work as a well tender, cleaner, flood assistance worker, and brush cutter; the ALJ found that Claimant's past relevant work did not require the performance of work-related activities precluded by Claimant's RFC. (Tr. at 20, Finding No. 6.) On this basis, benefits were denied. (Tr. at 22, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

He was born on January 14, 1974, making him 37 years old on the alleged onset date, defined as a "younger person" by the Regulations. (Tr. at 62, 76.); <u>See</u> 20 C.F.R. § 404.1563(c); Claimant has a twelfth grade education and attended special education classes. (Tr. at 170.) His work history includes employment as a well tender, pipe liner, maintenance man, and flood victims' assistant. (<u>Id</u>.)

<u>The Medical/Educational Record</u>

The Claimant's appeal is limited to the ALJ's failure to explain what portions of the State agency opinions regarding Claimant's mental RFC assessment where her own RFC assessment did not include their limitations, and to the ALJ's failure to evaluate the two State agency psychological consultants' opinions pursuant to the Regulations. Accordingly, the undersigned has considered all evidence of record, including the medical evidence, with particular concentration on that evidence pertaining to Claimant's arguments subject to this appeal, and discusses it below.

<u>Clay County School Records:</u>

Because of Claimant's small size at age seven, he was sent for a psychological evaluation and other tests. (Tr. at 231-242.) Notably, Claimant was diagnosed with borderline mental retardation based on I.Q. (76 Stanford Binet), and was recommended for a school program designed for slower than average students. (Tr. at 235.) Another psychological evaluation and I.Q. testing was administered when Claimant was sixteen: his full scale I.Q. was 83 per the Wechsler Intelligence Scale for Children-Revised (WISC-R); his reading and math grade equivalents were 3.5 and 7.2 respectively. (Tr. at 228-229.) Due to the severe discrepancy, it was recommended that Claimant continue to receive instruction as a Learning Disabled student. (Tr. at 230.)

<u>Big Otter Clinic:</u>

The record provides that Claimant received routine medical treatment at Big Otter Clinic from January 21, 2008 through February 19, 2014. (Tr. at 259-347, 385-399.) Regarding his anxiety and depression, Claimant first presented with complaints on January 21, 2008; he was stressed being off work for a broken arm. (Tr. at 302.) By April 7, 2008, Claimant reported that he quit taking Paxil[2] and continued to have sleep difficulties resulting in him drinking 4-5 beers a night; he planned to quit drinking and was advised to use Ativan to help with withdrawal. (Tr. at 286-287.) A note dated February 24, 2009 indicated that Claimant was stressed and anxious "over things that shouldn't bother him" and that he worried about everyone; he quit going to church and started drinking again. (Tr. at 324.) Psychologically, he had normal judgment and insight, was not suicidal or delusional; memory was good, with normal affect; he appeared stressed and slightly tearful. (Tr. at 325.) For his anxiety, he was given buspar, and healthy ways to handle anxiety was discussed. (Id.) By March 9, 2009, Claimant reported that he was doing very well on buspar and felt a lot less anxious and nervous, and felt that he could deal with things a lot better and remained more calm. (Tr. at 321.) Claimant continued to do well with his anxiety until June 29, 2009 when he was laid off from his job, and he began to get "very nervous in a crowd"; his buspar dosage was increased. (Tr. at 317.) By September 17, 2009, Claimant was doing well and reported no problems. (Tr. at 315.) Claimant continued to have episodes of worsening and lessening of his depression and anxiety symptoms through February 22, 2011, when he complained of worsening anxiety and depression; he admitted to drinking more "to cope" but refused a psych consult. (Tr. at 309.) The plan was to wean Claimant off buspar and start Ativan, for his depression, Cymbalta was started. (Tr. at 310.) By March 29, 2011, Claimant reported that Ativan helped "much better

_____
[2] Because he had no insurance, he was referred to purchase Paxil at Wal-Mart. (Tr. at 303.)

than any other med" and was "able to go out of the house with this med"; he felt less anxious, however, he quit Cymbalta because it "made him sick." (Tr. at 307.) On March 30, 2012, Claimant continued to have problems with anxiety and feeling "down in the dumps all the time", and admitted to only drinking to go to sleep at night. (Tr. at 270.) Psychologically, his judgment and insight were normal, he was not suicidal or delusional, memory was good with normal affect; the plan was to again discontinue buspar and to start Zocor and Lunestra for sleep was increased. (Tr. at 272.) By August 3, 2012, due to continued problems with anxiety and with leaving his house, Claimant was "advised to go to psych at Process Strategies in Charleston through the free walk in clinic." (Tr. at 262.)

Prestera Center East:

Records show that Claimant was treated for panic attacks and depression at Prestera Center for Mental Health Services from February 25, 2013 through February 10, 2014 at three to four month intervals. (Tr. at 357-384.) For the first several months, Claimant reportedly was doing well on his medications until September 16, 2013 when he complained of worsening anxiety and panic attacks; there were issues with his daughter. (Tr. at 373.) He was started on Inderal for anxiety and panic attacks. (Tr. at 375.) By November 11, 2013, Claimant reported improvements with the Inderal and no side effects; he had no worsening panic attacks, mood swings, depression or any anger outbursts and looking forward to hunting season and the holidays. (Tr. at 377.) The last note dated February 10, 2014 indicated that Claimant reported having good days and bad days, but continued to do well on his medications and again reported no worsening panic attacks, mood swings, depression or any anger outbursts. (Tr. at 381.)

State Agency Psychological Examiner:

On May 21, 2012, Larry J. Legg, M.A., interviewed Claimant and administered a mental status examination, the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), and the Wide Range Achievement Test – Fourth Revision (WRAT-4). (Tr. at 249-258.) Claimant presented wearing a hearing aid in his left ear and reported that he could hear normal conversation easily. (Tr. at 249-250.) He reported that he graduated high school with a regular diploma, although he was in special education most of his high school years. (Tr. at 250.) He reported that his "bad nerves" where he experienced nervousness and shaking in the last two or three years was the result of having been given to high a dose of blood pressure medication; he avoided social and performance situations as a result and recognized his fear was excessive and unreasonable. (Tr. at 251.) Claimant's test results in the WAIS-IV indicated a full scale I.Q. of 68 and deemed valid. (Tr. at 253-254.) Results from the WRAT-4 indicated Claimant's word reading, spelling and math computation scores were also valid. (Tr. at 254.) The mental status examination revealed that Claimant was within normal limits; concentration was judged to be mildly deficient, persistence was deemed within normal limits, and pace was judged to be mildly deficient. (Id.) With regard to social functioning, Claimant was deemed mildly deficient. (Id.) Mr. Legg diagnosed Claimant major depressive disorder, recurrent, severe, without psychotic features and social anxiety disorder based on Claimant's report and the information contained in the records for Mr. Legg's review; he was also diagnosed with borderline intellectual functioning. (Tr. at 255.) Mr. Legg opined that Claimant could manage his own finances. (Id.)

State Agency Psychological Consultant:

On June 15, 2012, Aroon Suansilppongse, M.D., a State agency psychiatrist, reviewed the evidence in connection with Claimant's initial application, and opined that his severe mental

impairments, borderline intellectual functioning and affective disorders, resulted in mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one or two repeated episodes of decompensation, each of extended duration. (Tr. at 65-66.) With regard to mental RFC, Dr. Suansilppongse opined that Claimant was able to understand, remember and carry out simple instructions; that his "ability for sustained concentration and persistence or for task completion would be minimally limited due to anxiety and depressive reaction and alleged pain"; and that his "ability for appropriate interaction with supervisors, coworkers or the public would be minimally limited due to social avoidance and anxiety reaction". (Tr. at 69-70.) Dr. Suansilppongse further opined that Claimant's "adaptability in a routine work setting would be minimally limited due to transient cognitive dysfunction and possible alcohol abuse." (Tr. at 71.)

At the reconsideration level, on August 17, 2012, Bob Marinelli, Ed.D., opined that Claimant's records indicated moderate difficulties in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, and one or two repeated episodes of decompensation, each of extended duration. (Tr. at 81.) Dr. Marinelli's mental RFC assessment mirrored Dr. Suansilppongse's with the exception that Claimant's "adaptability would be minimally limited due to transient cognitive dysfunction and limitations in traveling independently". (Tr. at 84-86.)

The Administrative Hearing

Claimant's Testimony:

Claimant testified that he had not worked since November 2011. (Tr. at 33.) He stated that stomach problems, vomiting, anxiety, and constant diarrhea prevented him from working. (Tr. at

34.) In answering questions from the ALJ, Claimant testified that he was laid off from his last job, and collected unemployment benefits, while he looked for work. (Tr. at 37.) Claimant stated he has had stomach pains, with vomiting and diarrhea, and anxiety for a long time and those problems continue to get worse. (Tr. at 34.) Claimant testified that he has been prescribed medications that did not help his stomach problems. (Tr. at 34-35.) He stated that he uses the bathroom for vomiting and diarrhea two to four times a day; Claimant testified that he takes no medication for diarrhea or any of the gastrointestinal issues, although he takes Nexium. (Tr. at 36, 48.) Claimant stated that he experiences stomach pain associated with vomiting and diarrhea; his current weight was 155, although he usually weighs 110, Claimant explained his weight gain was due to inactivity. (Tr. at 36.) He stated that on typical day his stomach pain level is a four or five out of ten. (Tr. at 38.) Claimant testified that he has trouble hearing in both ears, but mostly in the left ear; he stated that he wears hearing aids, but able to have conversations. (Tr. at 38-39.)

Claimant testified that his doctor suggested that alcohol might be contributing to his stomach problems. (Tr. at 39.) He stated he experienced a stomach infection, and started taking antibiotics and stopped drinking, however his stomach problems continued. (Id.) Claimant admitted that he drinks a six-pack of beer in the evening before bed, because if he does not, he can go two or three days without sleeping. (Tr. at 40.) Claimant testified that his doctors have not encouraged him to stop drinking alcohol, except when he was taking antibiotics. (Id.)

Claimant testified that his anxiety has gotten worse in the last three or four years. (Tr. at 41.) He receives ongoing treatment for anxiety by a psychiatrist every two to three months, but he does not receive weekly or monthly counseling or therapy. (Id.) He stated that he cannot be around crowds, because he gets too nervous and panics; he avoids clubs, meetings, or religious services.

(Tr. at 42.)

Claimant lives with his wife and two children. (<u>Id</u>.) His wife works full-time at a law firm; he does not have trouble getting along with his wife and children. (<u>Id</u>.) Claimant stated that when he was working he did not have trouble getting along with his supervisors and coworkers. (Tr. at 43.) He only leaves his home for doctor's appointments or to visit his mother and father who live beside him. (<u>Id</u>.) Claimant does not go grocery shopping; he does not leave his house twenty-five days per month. (<u>Id</u>.)

Claimant testified that he completed the twelfth grade and was in special education classes. (<u>Id</u>.) He began learning disability classes while he was in grade school and this continued through the twelfth grade. (<u>Id</u>.)

Claimant testified that he does no chores around the house: dishes, laundry or cleaning up. (Tr. at 44.) He cooks for himself sometimes, mostly soup from a can. (<u>Id</u>.) Mostly, he watches television during the day. (<u>Id</u>.) He went fishing once last summer and went hunting twice in November with his daughters. (<u>Id</u>.) He stated he gets a little lazy sometimes with personal hygiene and his wife gets on him. (Tr. at 45.) He stated that most of the time he is not able to pay attention to a whole thirty minute television program; he gets distracted by his wife or kids talking with them. (<u>Id</u>.) Claimant testified that he would be able to understand very simple instructions. (Tr. at 46.) The only activities he does with his daughters is taking them fishing once or twice a year. (Tr. at 47.)

Claimant testified that he takes Inderal or Propranolol interchangeably for anxiety, which helps to calm him down while he is at home, however if he gets around people or crowds he gets nervous and it does not help. (Tr. at 49.)

<u>Karen White, Vocational Expert:</u>

The ALJ asked the VE to provide a vocational assessment of Claimant's past relevant work. (Tr. at 56-57.) The VE testified that his past relevant work included: assisting flood victims, semi-skilled, light work; cleaning jobs, unskilled, light work; well tender, unskilled, medium work; and brush cutter, semi-skilled, medium work. (<u>Id</u>.) The ALJ then asked the VE whether an individual of Claimant's age, education, and past jobs as described, who could perform medium work with occasional exposure to extreme heat; frequent exposure to hazardous conditions including unprotected heights and moving machinery; moderate noise exposure defined as business office with typewriters in use, department store, grocery store, light traffic and fast food restaurants at off hours; and occasional interaction with the general public. (Tr. at 56.) The VE stated that the individual would not be able to perform the past work of a brush cutter, however, the well tender, cleaning, and assisting of flood victims would remain. (Tr. at 57.) The ALJ asked the VE to further assume that the above individual was limited to performing simple routine tasks, to which the VE stated the previously identified jobs would remain, with the exception of assisting of flood victims work. (Tr. at 57-58.)

Claimant's representative asked the VE to add an additional limitation to the ALJ's first hypothetical that the individual would be limited to no interaction with the public, no interaction with coworkers, and occasional interaction with supervisors, to which the VE stated that the past work of well tender and cleaning jobs would still be available. (Tr. at 58.) Claimant's representative then asked the VE to add to his prior hypothetical that the individual would be limited to simple, routine, unskilled tasks, no production demands or quotas, and would be off task due to a combination of pain and frequent need to use the restroom or upset stomach or other

14

gastrointestinal reasons such that their productivity would be twenty percent less than their coworkers, to which the VE responded that such an individual would not be able to maintain employment. (Tr. at 59.) Claimant's representative then asked the VE to consider a hypothetical individual who would be absent or tardy from the workplace one-third of the time; the VE responded that such an individual would not be able to maintain employment. (Tr. at 60.)

Claimant's Challenges to the Commissioner's Decision

Claimant presents two main grounds in which the ALJ erred: first, Claimant argues that the ALJ failed to provide an adequate explanation for her RFC finding, frustrating meaningful review for the Court (Document No. 9 at 8-12.); second, Claimant argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 in evaluating the opinions of two State agency psychological consultants. (Id. at 12-14.)

Claimant contends that the ALJ's RFC assessment conflicts with the State agency psychological consultants' opinions (Dr. Suansilppongse and Dr. Marinelli) as well as with the opinion provided by the State agency psychological examiner (Mr. Legg). (Id. at 11.) Claimant argues that the ALJ did not explain what portions of the State agency assessments she credited in her RFC and failed to explain her contrary findings; for example, both State agency assessments provided limitations in acting appropriately with supervisors, coworkers, and the public due to Claimant's social avoidance and anxiety reaction, however, the ALJ found no such limitations. (Id.) Further, the ALJ does not explain this and does not provide where it is supported in the record. (Id. at 12.) Due to this failure to explain, remand is necessary pursuant to Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Id.)

Next, Claimant argues that the ALJ did not properly evaluate the opinions provided by Drs.

Suansilppongse and Marinelli per Regulations, as she gave them partial weight due to their consistency with the overall evidence of record, but without explanation. (Id. at 13.) The ALJ was supposed to provide a more "detailed assessment" in her mental RFC but did not do so per SSR 96-8p. (Id.)

The Commissioner responds that Claimant confuses the summary conclusions of the mental RFC assessment with the actual narrative RFC assessments issued by the State agency consultants. (Document No. 10 at 4-5.) The Commissioner explains that the Agency's Program Operations Manual System (POMS) DI 25020.010(2)(a)-(d) ("Mental Abilities Needed For Any Job") explains that these "summary conclusions" are not part of the actual RFC assessment issued by the State agency per POMS DI 24510.060(B)(2). The Commissioner argues that the ALJ was not required to incorporate those portions into the RFC assessment, but appropriately included only a limitation to simple routine tasks with occasional interaction with the general public, therefore she fully accounted for the limitations as opined by the State agency psychological consultants. (Id. at 6.) Further, the Commissioner contends that where Mr. Legg only opined Claimant had mild deficiencies in concentration, persistence or pace and social functioning, the ALJ was not required to include them in the RFC. (Id.) Therefore, the ALJ adequately identified Claimant's mental limitations as described by the State agency consultants, included them into her RFC assessment, where remand under Mascio is unwarranted. (Id. at 6-7.)

The Commissioner argues that Claimant's next ground of contention is an invitation to re-weigh the evidence, despite the decision being supported by substantial evidence, and further contends that "even if the ALJ discussed the weight given to these opinions in even more detail, there is no evidence that the ALJ's decision would change on remand." (Id. at 8-9.) The

Commissioner reminds the Court should affirm the ALJ's decision, even where there is error, if there is "no question that he would have reached the same result notwithstanding his initial error." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). (Id. at 8.)

Claimant replies that the ALJ found moderate limitations in his social functioning and concentration, persistence, or pace, but failed to include his limitations in concentration, persistence, or pace in her RFC assessment. (Document No. 11 at 1-2.) Further, the ALJ did not explain why she did not include these limitations in her RFC, and the Commissioner's post hoc rationale does not cure this error, accordingly, Claimant argues, remand pursuant to the holding in Mascio is appropriate. (Id. at 2.) Finally, Claimant contends that the Commissioner failed to abide by her own Regulations and case law with regard to the evaluation of the opinions provided by the two State agency psychological consultants. (Id. at 3.)

Analysis

Regarding the first ground where the ALJ erred, Claimant contends that her finding of moderate difficulties in concentration persistence or pace is not reflected in the RFC, and she provided no explanation for its omission, thus necessitating remand pursuant to Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Document No. 9 at 8-12, Document No. 11 at 1-2.)

At steps four and five of the sequential analysis, an ALJ must determine a claimant's RFC for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider a claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545, 416.945. "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but

17

is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1546, 416.946.

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. Rather, the Fourth Circuit adopted the Second Circuit's approach

that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (Citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Social Security Ruling 96-7p[3] clarifies when the evaluation of symptoms, including pain, under 20 C.F.R. §§ 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements.

The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

---

[3] The undersigned is aware that this Ruling has been superseded by SSR 16-3p, effective March 16, 2016, however, SSR 96-7p was in effect at the time of the decision, April 25, 2014.

In this case, the ALJ found that Claimant had moderate difficulties in social functioning and in concentration, persistence, or pace; the latter finding was based on Claimant's report that he shops by telephone, that he could count change, and that Mr. Legg found Claimant mildly impaired in concentration and pace, but persistence was within normal limits. (Tr. at 16, 18.) The ALJ then identified these "paragraph B" limitations not as RFC, but used to rate the severity of the mental impairments. (Tr. at 16.) Next, the ALJ performed the two-step process required to assess Claimant's symptoms with the objective medical evidence, and found that Claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. at 18.)

The ALJ noted that the objective findings do not support the limitations alleged by Claimant, citing the findings by Mr. Legg during the consultative psychological evaluation on May 21, 2012, the treatment notes concerning Claimant's anxiety and depression from Big Otter Clinic and Prestera Center. (Tr. at 18-19.) The ALJ noted the evidence dated August 2012 from Angela Carter, FNP at Big Otter indicated that Claimant's memory was good and judgment and insight were normal, and that the evidence dated February 25, 2013 from Dr. Dilip Chandran of Prestera Center indicated that Claimant's mental status examination was "overall normal." (Tr. at 18.) The ALJ referenced the office notes dating May 20, 2013 through February 2014 from Dr. Chandran documented Claimant's treatment for depression and anxiety, that Claimant reported that he was doing well on his medications, that he had good days and bad days, and that most recently Claimant had experienced no worsening panic attacks, mood swings, depression, or any anger outburst. (Tr. at 19.) The ALJ noted Claimant's treatment for these conditions had been conservative and "essentially routine", and that he failed to follow up on recommended counseling; moreover, the

ALJ noted Claimant reported no side effects from his medication. (Id.) The ALJ also noted Claimant's testimony that he left his last job due to a business-related layoff instead of allegedly disabling impairments. (Id.)

With regard to Claimant's psychological impairments, the ALJ took note of Dr. Aroon Suansilppongse's opinion finding, among other "paragraph B" criteria, Claimant's moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 20.) The ALJ noted Dr. Suansilppongse opined that the evidence did not establish "paragraph C" criteria, and that Claimant "had the capacity to understand and remember simple instructions." (Id.) The ALJ assigned "partial weight" to this opinion due to its consistency with the overall evidence of record. (Id.) The ALJ also gave "partial weight" to Dr. Marinelli's opinion, who also found Claimant had moderate difficulties in maintaining concentration, persistence, or pace and had the capacity to perform simple work related activity one to two steps tasks. (Id.) Again, the ALJ found Dr. Marinelli's opinion was consistent with the record as a whole, but "as discussed above", found the evidence did not support a finding that Claimant was as psychologically limited as alleged. (Id.)

In Mascio v. Colvin, the Court determined that nowhere did "the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's residual functional capacity." 780 F.3d at 640. It was this "lack of explanation," the Court held, which "requires remand." Id.[4] In this case, the ALJ's RFC findings

---

[4] The facts of Mascio is a case study of an ALJ decision rife with error: there were conflicting RFC assessments by two State agency consultants, the ALJ's findings were more consistent with one, but did not mention it, and the ALJ's discussion of the other trailed off at the point of weighing the evidence; the RFC was lacking in analysis for meaningful review; and of grave importance, the ALJ assessed the claimant's credibility after the RFC in contravention of the Regulations.

seemingly adopt the RFC determinations by the two State agency psychological consultants (Suansilppongse and Marinelli), based on her finding Claimant was moderately limited in social functioning, concentration, persistence or pace, and that Claimant "experienced one to two episodes of decompensation, each of extended duration". (Tr. at 16, 20.) However, the RFC assessment does not adequately reflect these moderate limitations because the only accommodations made for Claimant's mental impairments was by placing him in a work environment where "[h]e is able to perform simple routine tasks[5] with occasional interaction with the general public". (Tr. at 17.) The ALJ provided no citation in the medical evidence for the finding that Claimant experienced one to two episodes of decompensation, and there was no explanation why these limitations were not included in the hypothetical to the VE or why they were simply unnecessary to the RFC assessment. Indeed, the RFC opinions provided by the State agency consultants conflict with the opinion provided by the State agency examiner, but the ALJ's reconciliation of same is without explanation, and results in a RFC assessment that does not even consider her own findings that Claimant had moderate mental deficits in functioning. Accordingly, the undersigned finds that the ALJ's RFC assessment was erroneous because the ALJ provided insufficient explanation for her findings supporting same, precluding meaningful judicial review, and is thus, not supported by substantial evidence.

Claimant's next argument is that the ALJ failed to comply with the dictates of 20 C.F.R. § 404.1527 in evaluating the opinions of State agency psychological consultants Dr. Suansilppongse and Dr. Marinelli. (Document No. 9 at 12-14, Document No. 11 at 3.) There is no dispute that these two State agency consultants were non-examiners; Section 404.1527(c)(1) provides that

---

[5] Both State agency psychological consultants opined that Claimant had the capacity to understand and remember simple instructions and perform simple work related activity. (Tr. at 20, 70, 86.)

more weight is given to the opinion of an examining source than to a non-examining source. Further, Section 404.1527(c)(3)-(4) states: "because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions[]"; and "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Finally, it is well known that a treating source is generally given controlling weight under Section 404.1527. The ALJ had reviewed numerous treatment records from Prestera Center where Dr. Chandran found Claimant generally doing well over a period of several months, even without recommended counseling. (Tr. at 18-19.) Against this medical evidence, as well as the opinion evidence provided by State examiner Mr. Legg, the ALJ explicitly found the State agency consultants' opinions were due only partial weight, as she noted the evidence did not support such restrictive psychological impairments. (Tr. at 20.) From the undersigned's review of the decision and evidence, the ALJ's initial evaluation of these two consultants' opinions appears proper given the parameters under Section 404.1527, however, as discussed in the RFC assessment, *supra*, the undersigned agrees with Claimant that the ALJ failed to account for which portions of the opinions she accepted and which she rejected, and provided no explanation for her findings in accordance with the Regulations, particularly with respect to the RFC assessment. Accordingly, the undersigned finds that the ALJ's evaluation of the opinion evidence was not based on substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's Motion for Judgment on the Pleadings (Document No. 9.), **DENY** the

Defendant's Motion for Judgment on the Pleadings (Document No. 10.), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings in order to provide an appropriate evaluation of the conflicting opinion evidence as well as to provide further explanation for what evidence supported the Commissioner's ultimate conclusions.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: November 2, 2016.

Omar J. Aboulhosn
United States Magistrate Judge